OPINION
Defendant-appellant Charles Ables appeals from his conviction and sentence, following a no-contest plea, for Driving Under the Influence, Driving Under Suspension, and Resisting Arrest. Ables contends that the trial court erred by denying his motion to suppress evidence. Ables argues that the police officer who confronted him was without probable cause to arrest him for DUI. We have reviewed the record, and we conclude that there is evidence in the record to support the trial court's conclusion that there was probable cause to believe that Ables was guilty of Driving Under the Influence when the arrest was made. Consequently, the judgment of the trial court is Affirmed.
 I
Germantown police officer John Reeder was completing a "bar check" near the end of his shift at 11:50 p.m. on December 3, 1999, when he saw Ables, Ables' girlfriend, and a couple other people who Reeder knew. Reeder testified that:
 Throughout the evening, I did several bar checks and I had seen the defendant in there on several of the other bar checks and I know what he was drinking and he appeared to be intoxicated then.
On cross-examination, Reeder testified concerning his qualifications for determining whether someone is intoxicated:
 A. My qualifications are I have been a police officer since 1995. I've had occasions to deal with several intoxicated people. I have been to the Academy with the training on the intoxication.
Q. How much training was that?
 A. I would have to refer to my records to exactly tell how much training we had in that particular course. Also the, just life experience itself.
 Q. So you haven't taken any specific classes as to intoxication correct?
 A. I've taken the intoxilyzer class. I've also had, like I said, in the Academy, we had specific training geared toward dealing with intoxicated people.
Q. And how to control them?
A. How to interpret them, how to detect them.
Reeder's observations led him to suspect that Ables might be planning to drive a car that Ables was approaching. Reeder checked with his dispatcher to see whether Ables had driving privileges, and discovered that Ables did not have driving privileges. Reeder got in his cruiser and started back to his post, but decided to turn back and make sure that Ables was not going to try to drive.
When Reeder got to a position where he could see, he saw Ables sitting in the driver's side of a car, with another person sitting in the passenger's side, and the engine running. Reeder then saw the brake lights come on. At that point, Reeder ran over to the vehicle and confronted Ables. Reeder told Ables that he had a problem, because Ables could not be driving. Ables said that he knew that. At this point, Ables did not appear to appreciate that he might already be exposed to criminal liability for operating a motor vehicle, and Ables was cooperative.
Reeder asked Ables to get out of the car, and Ables did so. Reeder described Ables' demeanor as follows:
 As he got out of the car I noticed him stumble, there was a very strong odor of alcoholic beverage, he had bloodshot-glassy eyes. A slur to his speech and you know, he walked up on the sidewalk there and I explained to him and I explained to him the reason, I said number one you don't have a driver's license and number two, I believe you are intoxicated. I had called for another officer at that point and I advised him, I said what I have done is I have called another officer to the scene and I'm gonna administer a few field soberity [sic] tests to, you know, see if you should be operating a vehicle tonight. And at that point he became irate.
The other officer called to the scene, Kevin J. Shields, testified that he believed Ables to be intoxicated, based upon Ables' slurred speech, bloodshot eyes, and the fact that Ables was swaying back and forth, based upon Shields' experience of almost six years as a police officer.
Ables, who appeared to believe that he could not possibly be charged with any offense based on having operated the vehicle, refused to undergo any sobriety tests. At that point, Reeder placed Ables under arrest, and he was transported to the police station.
Ables was charged with Driving Under the Influence, seven counts of Driving Under Suspension, and Resisting Arrest. He moved to suppress evidence, contending that it was obtained as the result of an unlawful stop and arrest. The trial court conducted a hearing on the motion, following which it denied the motion to suppress. Thereafter, Ables pled no contest to Driving Under the Influence, one count of Driving Under Suspension, and Resisting Arrest. His no-contest plea was accepted, he was found guilty, and he was sentenced accordingly. From his conviction and sentence, Ables appeals.
 II
Ables' sole assignment of error is as follows:
 THE TRIAL COURT ERRED WHEN IT REFUSED TO SUPPRESS THE EVIDENCE, BECAUSE THE STATE FAILED TO MEET ITS BURDEN OF PROVING THAT THE OFFICER HAD PROBABLE CAUSE TO BELIEVE THAT APPELLANT WAS INTOXICATED.
On appeal, Ables challenges the arrest, contending that it was without probable cause. Ables cites State v. Taylor (1981), 3 Ohio App.3d 197, for the proposition that the act of nominally exceeding the speed limit, combined with a police officer's perception of an odor of alcohol, is not sufficient to establish probable cause to arrest an individual for Driving Under the Influence. In that case, the court of appeals was at pains to point out the dearth of evidence to establish that the defendant was intoxicated:
 If we were able to find anything in this record which would have indicated the existence of some reasonable indicia of operation under the influence of alcohol, we would not hesitate to reverse the trial court's decision in suppressing the tests. However, we do not find this to be the case. The mere odor of alcohol about a driver's person, not even characterized by such customary adjectives as "pervasive" or "strong," may be indicia of alcohol ingestion, but is no more a probable indication of intoxication than eating a meal is of gluttony.
Id., at 198.
Ables also cites State v. Finch (1985), 24 Ohio App.3d 38. The facts in that case are much closer to the case before us. The court held that a "strong" odor of alcohol, bloodshot eyes, a flushed face, and slurred speech, were insufficient, without more, to constitute probable cause for an arrest for Driving Under the Influence. The court noted, however, that there was no evidence in the case before it of stumbling, difficulty in walking, or any other evidence of impaired motor coordination. Id., at 40. The court noted that had the officer instructed the defendant to perform field sobriety tests, and had the defendant failed those tests, the officer would have had reasonable grounds to believe that the defendant was operating a vehicle while under the influence of alcohol. Id.
We find it unnecessary to decide whether we agree with the holding in State v. Finch, supra. In the case before us, the arresting officer had the additional evidence that Ables was having trouble walking, that he stumbled on at least one occasion, and that, while standing still, he was swaying back and forth. This is evidence of impaired motor coordination sufficient to distinguish the case before us from State v. Finch, supra.
We conclude that Officer Reeder, based upon his experience and training with respect to intoxication, had probable cause to believe that Ables was Driving Under the Influence. Although not argued by the State, we note that Reeder had probable cause to arrest Ables for Driving Under Suspension, even without the evidence that Ables was intoxicated.
Ables' sole assignment of error is overruled.
 III
Ables' sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and GRADY, JJ., concur.